**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**EDWARD C. BROWN,**

                **Plaintiff,**

              v.                                  6:00-CV-1147
                                                               (GLS)

**COMMISSIONER OF SOCIAL SECURITY,**

                **Defendant.**
_____

**APPEARANCES:**           **OF COUNSEL:**

**FOR THE PLAINTIFF:**

Oot, Stratton Law Firm       MICHAEL P. OOT, ESQ.
4983 Brittonfield Parkway
East Syracuse, NY 13057

**FOR THE DEFENDANT:**

HON. GLENN T. SUDDABY     WILLIAM H. PEASE
United States Attorney         Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

**Gary L. Sharpe**
**U.S. District Judge**

**DECISION AND ORDER**

### I. Introduction

Edward Brown alleges that a back injury and a low I.Q. have disabled him, and challenges the denial of benefits by the Commissioner of Social Security. Having reviewed the administrative record, the court affirms the Commissioner's decision.

### II. Procedural History

After Brown filed for disability insurance benefits in July 1998, his application was denied, and a hearing was conducted by Administrative Law Judge Thomas Zolezzi (ALJ). In September 1999, the ALJ issued a decision denying benefits, which became the Commissioner's final determination when the Appeals Council denied review on June 30, 2000.

On July 26, 2000, Brown brought this action pursuant to 42 U.S.C. § 405(g) seeking review of the Commissioner's final determination. The Commissioner then filed an answer and a certified administrative transcript, Brown filed a brief, and the Commissioner responded.

### III. Contentions

Brown contends that the Commissioner's decision is not supported by substantial evidence. He claims the ALJ (1) ignored evidence of a non-

2

exertional impairment that would limit his ability to perform the full range of light work; and (2) improperly relied on the Medical-Vocational Guidelines (grids) in finding him "not disabled." The Commissioner counters that substantial evidence supports the ALJ's decision.

### IV. Facts

The evidence in this case is undisputed and the court adopts the parties' factual recitations. *See Pl.'s Br., unnumbered pp. 3-6, Dkt. No. 6; Def.'s Br. at 2-7, Dkt. No. 7*.

### V. Discussion

#### A. Standard and Scope of Review

When reviewing the Commissioner's final decision under 42 U.S.C. § 405(g), the court "must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) (citation omitted). It does not determine *de novo* whether a claimant is disabled. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000) (citation omitted). Although the Commissioner is ultimately responsible for determining a claimant's eligibility, the actual disability determination is made by an ALJ, and that decision is subject to judicial review on appeal. A court may not affirm an ALJ's decision if it

reasonably doubts whether the proper legal standards were applied, even if it appears to be supported by substantial evidence.  *See Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004) (citation omitted); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  "Failure to apply the correct legal standards is grounds for reversal."  *Pollard*, 377 F.3d at 189 (internal quotation marks and citation omitted).

A court's factual review of the Commissioner's decision is limited to the determination of whether substantial evidence in the record supports the decision.  *See* 42 U.S.C. § 405(g); *see also Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence ... means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *See Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "To determine

on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *See* 42 U.S.C. § 405(g); *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

    The court has the authority to affirm, reverse, or modify a final decision of the Commissioner with or without remand. 42 U.S.C. § 405(g); *Butts*, 388 F.3d at 385. Remand is warranted where there are gaps in the record and further development of the evidence is needed, or where the ALJ has applied an improper legal standard. *See Butts*, 388 F.3d at 385; *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (citation omitted). By contrast, reversal and remand solely for calculation of benefits is

appropriate when there is "persuasive proof of disability" and further development of the record would not serve any purpose. *Rosa*, 168 F.3d at 83; *Parker*, 626 F.2d at 235; *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983) (reversal without remand for additional evidence particularly appropriate where payment of benefits already delayed for four years and remand would likely result in further lengthening the "painfully slow process" of determining disability). However, absent sufficient evidence of disability, delay alone is not a valid basis for remand solely for calculation of benefits. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996) (citation omitted).

### B.   Five-Step Disability Determination

A plaintiff seeking Social Security Disability Insurance (SSDI) benefits is disabled if he can establish that he is unable "to engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ...." 42 U.S.C. § 423(d)(1)(A)[1] (emphasis added).

---

[1]In addition, a claimant's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but

The Commissioner uses a five-step process to evaluate SSDI claims. *See* 20 C.F.R. § 404.1520.[2] Step One requires the ALJ to determine whether the claimant is presently engaging in substantial gainful activity (SGA). 20 C.F.R. § 404.1520(b). If so, he is not considered disabled. However, if he is not engaged in SGA, Step Two requires that the ALJ determine whether the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant is found to suffer from a severe impairment, Step Three requires that the ALJ determine whether the claimant's impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, § 404.1520(d). The claimant is presumptively

---

> cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

Therefore, a plaintiff must not only carry a medically determinable impairment but an impairment so severe as to prevent him from engaging in any kind of substantial gainful work which exists in the national economy.

[2]The court notes that a revised version of this section came into effect in September 2003. *See* 68 Fed. Reg. 51161-62 (Aug. 26, 2003). In the revised version, paragraph (e) clarifies the application of the residual functional capacity (RFC) determination. New paragraphs (f) and (g), with certain modifications, correspond to the prior version's paragraphs (e) and (f), respectively. These revisions do not affect the Five-Step Disability Determination sequence. The revised version has no effect on the outcome of this case. For considerations of uniformity, and because the ALJ's decision came under the old version, the court retains the old nomenclature in its analysis.

disabled if the impairment meets or equals a listed impairment. *See Ferraris*, 728 F.2d at 584. If the claimant is not presumptively disabled, Step Four requires the ALJ to consider whether the claimant's residual functional capacity (RFC) precludes the performance of his past relevant work. 20 C.F.R. § 404.1520(e). At Step Five, the ALJ determines whether the claimant can do any other work. 20 C.F.R. § 404.1520(f).

The claimant has the burden of showing that he cannot perform past relevant work. *Ferraris*, 728 F.2d at 584. However, once he has met that burden, the ALJ can deny benefits only by showing, with specific reference to medical evidence, that he can perform some less demanding work. *See White v. Sec'y of Health & Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990); *Ferraris*, 728 F.2d at 584. In making this showing, the ALJ must consider the claimant's RFC, age, education, past work experience, and transferability of skills, to determine if he can perform other work existing in the national economy. 20 C.F.R. § 404.1520(f); *see New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

In this case, the ALJ found that Brown satisfied Step One because he had not worked since May 11, 1998. (Tr. 18, 23).[3] In Step Two, the ALJ

---

[3]"(Tr. )" refers to the page of the Administrative Transcript in this case.

8

determined that he suffered from degenerative disc disease and hypertension. (Tr. 19, 23).[4] In Step Three, the ALJ determined that these impairments failed to meet or equal a combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 18, 23). In Step Four, the ALJ determined that Brown did not have the RFC to perform his past relevant work as a paper mill rewinder operator. (Tr. 22, 23). In Step Five, the ALJ found that Brown possessed the RFC to perform the full range of light work.[5] (Tr. 23). Consequently, he found Brown not disabled[6] and denied benefits. (Tr. 23, 24).

### C.   Analysis - Brown's "Non-exertional[7] Impairment"

---

[4]The ALJ also found that Brown's remaining alleged impairments - coronary disease and renal disease - were unsupported by the record. (Tr. 19).

[5]Light work requires an ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). In addition, "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Social Security Ruling (SSR) 83-10.

[6]The ALJ made this determination using Rule 202.10 of Table 2, Appendix 2, Subpart P, Regulations No. 4.

[7]The Social Security Administration distinguishes two types of work capacity. Exertional capacity relates to an individual's physical strength and defines his remaining ability to sit, stand, walk, lift, carry, push, and pull. Non-exertional capacity refers to restrictions of one's mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, and feeling. It also includes environmental restrictions. *See* 20 C.F.R. § 404.1569a; SSR 96-9p. Relevant examples of non-exertional limitations include: difficulty functioning due to nervousness, anxiety or depression; difficulty maintaining one's attention or concentrating; and difficulty understanding or remembering detailed instructions. *See* 20 C.F.R. § 404.1569a(c).

Brown argues that the ALJ improperly relied on the grids in finding him not disabled at Step Five of the sequential analysis. Specifically, he contends that the ALJ failed to recognize his borderline I.Q. as a severe non-exertional impairment limiting his ability to perform the full range of light work.

The grids, set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 2, take into account a claimant's RFC, age, education, and work experience. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(a); 20 C.F.R. § 404.1569a(a); *Rosa*, 168 F.3d at 78. "'Generally speaking, if a claimant suffers only from exertional impairments, *e.g.,* strength limitations, then the Commissioner may satisfy her burden by resorting to the applicable grids. For a claimant whose characteristics match the criteria of a particular grid rule, the rule directs a conclusion as to whether he is disabled.'" *Rosa*, 168 F.3d at 82 (quoting *Pratts*, 94 F.3d at 38-39); *see also Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986).

Whether the grids apply is to be determined on a case-by-case basis. *Pratts*, 94 F.3d at 39 (citing *Bapp*, 802 F.2d at 605-06). Sole reliance on the grids is improper if a claimant suffers from both exertional and non-exertional impairments. *See Pratts*, 94 F.3d at 38-39; *Bapp*, 802 F.2d at

605-06.  Where the claimant's non-exertional impairments "significantly diminish" the range of work allowed by his exertional impairments, the grids alone do not "provide the exclusive framework for making a disability determination."  *Bapp*, 802 F.2d at 605-06.  To "significantly diminish" the claimant's range of work, a non-exertional impairment must cause an "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity."  *Id.* at 606; *see Pratts*, 94 F.3d at 39.  Where the claimant's range of work is significantly diminished by a non-exertional impairment, the Commissioner must adduce vocational expert testimony showing that the claimant can still perform a significant number of jobs available in the national economy.  *See Bapp*, 802 F.2d at 606; *Pratts*, 94 F.3d at 39.

    Brown contends that the ALJ should have recognized his functioning in the borderline of intellectual activity as a severe non-exertional impairment affecting his ability to perform the full range of light work.[8]  He

---

[8]In turn, the Commissioner argues that (1) Brown never alleged, and the ALJ never found, that he had a "severe" non-exertional impairment, and (2) Brown's work capacity was not "significantly diminished beyond that caused by his exertional impairment."  *See Bapp*, 802 F.2d at 605-06.  However, the Commissioner's brief contains no useful rationale or decisional precedent other than the above argument.

cites to *Baker v. Apfel*, 1998 WL 683773 (W.D.N.Y. Aug. 10, 1998)[9] and *Lee v. Shalala*, 872 F. Supp. 1166 (E.D.N.Y. 1994) for the proposition that a borderline I.Q. is a severe non-exertional impairment which requires vocation expert testimony.  Therefore, Brown contends that the ALJ's use of the grids was improper.  Brown's reliance on these cases is misplaced.

Clearly, certain intellectual and mental limitations can constitute non-exertional impairments affecting an individual's ability to work.  *See* 20 C.F.R. § 404.1569a(c).  As noted by the Second Circuit, "a borderline IQ has a bearing on employability, even as a mop-pusher, porter, or maintenance man." *De Leon v. Sec'y of Health & Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984).  In *Lee*, the court held that an I.Q. of 75 was a severe impairment causing non-exertional limitations, and remanded the case due to the ALJ's failure to consider the effects of this I.Q. on the claimant's work capacity.  *Lee*, 872 F. Supp. at 1170-71.  However, the record in *Lee* contained substantial evidence that the claimant's borderline intelligence limited his ability to perform certain essential activities.  *Id.* at

---

[9]*Baker* is not precisely on point, as the claimant there only suffered from non-exertional impairments.  *See Baker*, 1998 WL 683773, at *3.

12

1168-70. As discussed below, no such evidence is present here.[10]

In his decision, the ALJ considered the report by psychologist Stephen Fitzgerald, Ph.D.. (Tr. 19-21; 233-35). The ALJ noted that Brown was observed to be oriented, and his affective functions were normal. Brown's composite score on the Stanford-Binet Intelligence Scale- Fourth Edition[11] was 77.[12] On the Wide Range Achievement Test, Revision 3

---

[10]Moreover, the court doubts that *Lee* can be construed to hold that a borderline I.Q. is a severe impairment *per se*, as the genesis of this rationale finds its roots in SSR 82-55, a Ruling that has been rescinded by Ruling 85-III-II. The holding in *Lee* was based on *Cockerham v. Sullivan*, 895 F.2d 492 (8th Cir. 1990), where the Eighth Circuit held that "[a] claimant whose alleged impairment is an I.Q. of 70-79 inclusive has alleged a severe impairment ...." *Cockerham*, 895 F.2d at 496 (citing *Webber v. Sec'y of Health & Human Servs.*, 784 F.2d 293, 298 n.7 (8th Cir. 1986)). In addition, the Eighth Circuit's rationale in *Webber*, *supra*, rested on a deductive interpretation of SSR 82-55, which provided that an I.Q. of 80 and above was a "nonsevere" impairment. Based on the latter, the *Webber* court deduced: "[i]t follows that a claimant whose only alleged impairment is an I.Q. of 70 to 79 inclusive, *may* be disabled after consideration of vocational factors." *Webber*, 784 F.2d at 298 n.7 (emphasis added). Upon review, the language in *Webber* does not mandate a conclusion that an I.Q. in the 70-79 range is a always a severe impairment, but instead requires a case-by-case approach. *Accord Edwards ex rel. Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985) ("an I.Q. score below 80 may be a severe impairment").
    A similar conclusion has been reached by the Sixth Circuit, which had initially equated an I.Q. in this range to a severe impairment. *See Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 692 (6th Cir. 1985). However, in *Colwell v. Chater*, 98 F.3d 1341, 1996 WL 557773, at *3 (6th Cir. Sept. 30, 1996) (unpublished table decision), the Circuit noted that its "conclusion in *Salmi* that an individual with an IQ of less than eighty is necessarily severely impaired rested on a Social Security Ruling no longer in effect." In addition, the Court distinguished *Salmi*, which contained "substantial evidence ... that the plaintiff could not function in a working environment," and held that other facts relevant to a claimant's mental capacity should be considered. *Id.* at *3.

[11]A variation of a test generally used to ascertain a subject's mental age. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1671, 1686 (28th ed. 1994).

[12]Brown's area scores were: 82 in verbal reasoning; 86 in abstract/visual reasoning; 74 in quantitative reasoning; and 77 in short-term memory. Parenthetically, where more than one I.Q. score is reached from the test administered, the Commissioner considers the lowest score. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6).

(WRAT3), Brown scored at the sixth-grade level in arithmetic, and showed rudimentary skills in reading and writing (first- and second-grade levels, respectively). The ALJ also noted that the psychologist made no comment about the validity of the test results, and had found no mental impairment other than borderline intellectual functioning. (Tr. 19-20).

There is no evidence in the record that Brown's borderline intellectual functioning significantly limited his capacity for work. As the psychologist's report shows, Brown had entirely intelligible verbalization and expressed himself in an articulate manner. He showed no unusual logic or eccentric associations, and was able to follow a three-stage request. In addition, he showed normal affective functions, was oriented to time, space, and person, and denied any emotional or behavioral problems. Overall Bender-Gestalt test[13] results showed no gross neurological dysfunction. (Tr. 234). With respect to adaptive functioning, the psychologist noted that Brown was able to perform light household chores, was accustomed to shopping on his own, managed his own funds by paying bills and completing transactions at the bank, and claimed to be independent with respect to

---

[13] A psychological test based on reproduction of simple geometrical figures used to evaluate perceptual-motor coordination, personality dynamics, organic brain impairment, and neurological maturation. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1671 (28th ed. 1994).

14

self-care. (Tr. 235). Significantly, while the psychologist indicated that Brown was functioning in the borderline range of intellectual activity, he stated that "[t]here [was] NO evidence of mental health, neurological, or substance abuse issues currently affecting [Brown's] adjustment to adult life." (Tr. 235) (caps in original).[14]

Moreover, the ALJ apparently did not accept as credible the results of Brown's psychological evaluation. An ALJ is not required to accept a claimant's I.Q. scores and may reject them if they are inconsistent with the record. *See Clark v. Apfel*, 141 F.3d 1253, 1255-56 (8th Cir. 1998); *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992); *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986); *Soto v. Sec'y of Health & Human Servs.*, 795 F.2d 219, 222 (1st Cir. 1986); *Strunk v. Heckler*, 732 F.2d 1357, 1360 (7th Cir. 1984). In light of Brown's reported attempt to control the results of a physical evaluation in order to demonstrate a greater level of disability,[15]

---

[14] Parenthetically, it appears from Brown's testimony and the report that the evaluation, made at the request of the NYS Office of Vocational and Educational Services for Individuals with Disabilities (VESID), focused on Brown's capacity to develop a retail business or find alternative vocational placement. (Tr. 47, 233). In that regard, the only limitations found by the psychologist, who also indicated that Brown's work ability status was relatively good, were that he would require assistance with the legal and record-keeping aspects of a business, based on his rudimentary literacy skills which would make it difficult to perform managerial tasks. Considering Brown's ninth-grade educational level, the above limitations can not be reasonably attributed to his intellectual status.

[15] Brown does not contest this aspect of the ALJ's decision. As part of its obligation to consider the entire record, the court has reviewed the above determination, as well as the

the ALJ noted his desire to appear more limited than he actually was, and concluded that the psychological evaluation would not be a true measure of his abilities. In concluding that Brown did not have any mental limitations that would affect his ability to perform basic work activities, the ALJ also considered his past ability to function adequately in a work environment. (Tr. 21). In that regard, the ALJ noted that Brown stopped working because his employer had no work available with a 20-pound weight restriction, had a good work history, and had been employed on a regular basis for over 30 years. (Tr. 20-21). Accordingly, based on the above, the ALJ properly declined to accept Brown's alleged borderline intellectual capacity as a severe non-exertional impairment that significantly affected his exertional RFC, properly relied on the grids in finding Brown not disabled, and did not err in failing to obtain vocational expert testimony.

## VI.  Conclusion

After careful review of the entire record, and for the reasons stated, the Commissioner's denial of benefits was based on substantial evidence and not erroneous as a matter of law. Accordingly, the ALJ's decision is affirmed.

---

ALJ's credibility assessment of Brown, and finds them supported by the record.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision denying disability benefits is **AFFIRMED**; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties.

Dated:   June 30, 2005
         Albany, New York

Gary L. Sharpe
U.S. District Judge